GREGG A. HUBLEY, ESQ., NBN 7386
CHRISTOPHER A.J. SWIFT, ESQ., NBN 11291
**ARIAS SANGUINETTI WANG & TEAM LLP**
7201 W. Lake Mead Boulevard, Suite 570
Las Vegas, Nevada 89128
Telephone: (702) 789-7529
Facsimile:  (702) 909-7865
E-mail:  gregg@aswtlawyers.com
E-mail:  christopher@aswtlawyers.com

MARIANNE C. LANUTI, ESQ., NBN 7784
**LAW OFFICES OF MARIANNE C. LANUTI**
658 Falcon Summit Ct.
Henderson, Nevada 89012
Telephone:  (702) 501-1147
E-mail: NVKidsLaw@gmail.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| B.H., a minor by and through her Parent, Sirbrina Bell, | Case No.: 2:23-cv-00564-JCM-DJA |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | **JURY DEMAND** |
| CLARK COUNTY SCHOOL DISTRICT; SCARLETT PERRYMAN , individually; RYAN LEWIS, individually; KATHRYN FITZGERALD, individually;  DOES I-X, and ROE CORPORATIONS I –X, inclusive | |
| Defendants. | |

**COMES NOW,** Plaintiff, B.H., a minor by and through her natural parent, SIRBRINA BELL (collectively, "Plaintiffs"), by and through her counsel, and hereby complains and alleges as follows:

### I.      PRELIMINARY STATEMENT

1.      This is an action arising under the Constitution or laws of the United States, including the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq* ("Section 504") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq* ("ADA").

2.      Plaintiff seeks general damages, special damages, enhanced damages (only as to Defendant Fitzgerald), punitive/exemplary damages, reasonable attorney's fees, costs and disbursements of

this suit, and any further relief this Court may deem just and equitable.

## II.    <u>JURISDICTION</u>

3.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

4.    This Court has federal question jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq* ("Section 504") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq* ("ADA").

## III.    <u>VENUE</u>

5.    Venue is appropriate in this Court because Plaintiff and all Defendants reside in Nevada, and all events giving rise to this claim occurred in the State of Nevada.

## IV.    <u>PARTIES</u>

6.    Plaintiff B.H. ("Plaintiff" or "B.H.") is, and at all times relevant hereto was, a resident of the State of Nevada.

7.    B.H. has been diagnosed with Autism Spectrum Disorder and was non-verbal and unable to verbalize or articulate the abuse she suffered at all times relevant to the allegations of this Complaint.

8.    B.H. was eligible for special education under the category of Developmental Delay at all times relevant to the allegation of this Complaint, and her eligibility continues as she has been diagnosed with Autism Spectrum Disorder.

9.    At the times relevant to the allegations in this Complaint, B.H. attended Edith Garehime Elementary School, a school within CCSD and subject to regulation by CCSD.

10.    Plaintiff SIRBRINA BELL ("Sirbrina") is, and at all times relevant hereto was, a resident of the State of Nevada. Sirbrina brings this action as the natural parent of B.H.

11.    Defendant CLARK COUNTY SCOOL DISTRICT ("CCSD" or "Defendant") is, and at all times relevant hereto was, a division of the County of Clark, a Political Subdivision of the State of Nevada, and is not immune from suit under NRS 41.031.

12.    Defendant SCARLETT PERRYMAN is, and at all times relevant hereto was, the Region 1 School Associate Superintendent of CCSD. Defendant Perryman was responsible for ensuring that

students with disabilities attending schools within Region 1 of CCSD, including B.H., are treated in compliance with the requirements of State and Federal laws.

13.     Defendant Perryman is, and at all times relevant hereto was, a resident of the State of Nevada.

14.     Defendant RYAN LEWIS was at all times relevant hereto the Principal of Edith Garehime Elementary School. Defendant Lewis was responsible for ensuring that students with disabilities at Edith Garehime Elementary School, including B.H., are treated in compliance with the requirements of State and Federal laws, and was responsible for enforcing CCSD rules and regulations at Edith Garehime Elementary School..

15.     Defendant Lewis is, and at all times relevant hereto, was a resident of the State of Nevada.

16.     Defendant KATHRYN FITZGERALD ("Fitzgerald" or "Defendant") was B.H.'s Teacher of Record ("TOR") from the beginning of the 2022-2023 academic school year until she was removed from the classroom on October 13, 2022.

17.     Defendant Fitzgerald is, and at all times relevant hereto, was a resident of the State of Nevada.

18.     At all relevant times, Defendants DOES I-X were and are unknown to Plaintiff and are believed to be directors, employees or agents of Defendant CCSD who acted negligently, carelessly, or recklessly in the control, management, and/or maintenance of school and teaching/educational operations described herein and any and all people who were involved in the incidents described below. The true names, identities or capacities, whether individual or otherwise, of Defendants DOES I-X are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore alleges that each of the Defendants sued herein as DOES I-X are responsible in some manner for the injuries to Plaintiff that DOES Defendants I-X contributed to the negligence of Defendant CCSD, concealed and/or attempted to conceal the abuse and negligence of employees of Defendant CCSD, and/or participated in the unlawful conduct against Plaintiff described herein. Moreover, DOE Defendants set policies and/or otherwise required employees and agents of CCSD to violate the law and cover-up the physical and mental abuse inflicted on Plaintiff by the Defendants. Their actions and/or omissions proximately caused injuries and damages to Plaintiff. When the true names and capacities of such

Defendants become known, Plaintiff will ask leave of Court to amend this Complaint to insert the true names, identities, and capacities, together with proper charges and allegations.

19.     At all relevant times, Defendants ROE CORPORATIONS I-X were and are unknown to Plaintiff and are believed to be corporations, firms, partnerships, associations, or other entities involved in the operation, control, management, and/or maintenance of school and teaching/educational operations described herein and any and all entities who were involved in the incidents described below. The true names, identities or capacities, whether individual or otherwise, of Defendants DOES I-X are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore alleges that each of the Defendants sued herein as ROE CORPORATIONS are responsible in some manner for the injuries suffered by Plaintiff, in that ROE CORPORATIONS controlled CCSD, set policies for CCSD, and/or caused or contributed to the negligence of Defendant CCSD or others, as alleged herein, which thereby proximately caused the injuries and damages to the Plaintiff. When the true names and capacities of such Defendants become known, Plaintiff will seek leave of Court to amend this Complaint to insert the true names, identities, and capacities, together with proper charges and allegations.

20.     At all times relevant herein, Defendants, and each of them, were the agents, servants, partners, and employees of each and every other Defendant, and were acting within the course and scope of the agency, partnerships, and employment, and, to the extent permitted by the law, are jointly and severally liable.

## V.     GENERAL FACTUAL ALLEGATIONS AND CAUSES OF ACTION

21.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

22.     B.H., is a five-year-old girl who suffers from Autism Spectrum Disorder and is a qualified individual within the meaning of all applicable statutes, including Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12131, and NRS 426.068.

23.     At the beginning of the 2022-2023 academic school year, Defendant Fitzgerald was assigned by CCSD to teach B.H.'s class at Edith Garehime Elementary School.

24.     Upon information and belief, most or all of the students in Defendant Fitzgerald's class were students with a disability, like B.H.

25.     Throughout B.H.'s time at Edith Garehime Elementary School, B.H. was the victim of severe neglect and abusive practices inflicted upon her, including, but not limited to, those described herein by different CCSD employees and/or personnel, all by and under the authority, direction or control of Defendant CCSD.

26.     On August 10, 2022, Defendant Fitzgerald's Specialized Programs Teacher Assistant (hereinafter "TB") observed Defendant Fitzgerald grab B.H.'s wrist and force B.H. into the bathroom in the classroom. Defendant Fitzgerald then turned the bathroom lights off and closed the door, leaving B.H. in the dark bathroom by herself. Upon information and belief, Defendant Fitzgerald did not allow B.H. out of the bathroom until a student from another class later needed to use that bathroom.

27.     Defendant Fitzgerald admitted to CCSD Police Department (hereinafter "CCSDPD") that she placed B.H. in the bathroom and left her there because B.H. would not stop singing "Old MacDonald." Defendant Fitzgerald corroborated to CCSDPD that the bathroom lights were off while B.H. was in the bathroom. Defendant Fitzgerald further corroborated to CCSDPD that she shut the bathroom door after forcing B.H. into the bathroom alone.

28.     On January 23, 2023, Defendant CCSD substantiated the incident that occurred on August 10, 2022, as documented in a letter from Defendant Perryman.

29.     Defendant Fitzgerald regularly left her students, including B.H., alone in the classroom without any supervision, neglecting these students for extended periods of time.

30.     On August 10, 2022, TB returned from lunch and the students were in Defendant Fitzgerald's classroom but Defendant Fitzgerald was nowhere to be found.

31.     Defendant Fitzgerald did not return to the classroom until approximately thirty minutes after TB returned from lunch on August 10, 2022.

32.     On August 11, 2022, at or around 1:15 P.M., TB observed that Defendant Fitzgerald was not in the classroom and the students in the class were left alone.

33.     Defendant Fitzgerald did not return until approximately thirty minutes later on August 11, 2022.

34.     On August 15, 2022, TB observed that Defendant Fitzgerald was not in the classroom and the students in the class had again been left alone.

35. Defendant Fitzgerald did not return on August 15, 2022, until approximately fifteen minutes after TB observed that Fitzgerald had left the students alone in the classroom.

36. On August 17, 2022, TB again observed that Defendant Fitzgerald was absent from her own classroom and that students in the class had been left alone. On this occasion, TB reported that Fitzgerald left the students alone for about fourteen minutes before returning.

37. Later in the day on August 17, 2022, TB observed that Defendant Fitzgerald again left the students alone in the classroom. On this second occasion that day, Defendant Fitzgerald left the children alone in the classroom for approximately fifty minutes.

38. Another CCSD employee (hereinafter "KH") reported to CCSDPD that Defendant Fitzgerald manipulated her classroom door so that it only opened if the handle was pulled in an upward direction.

39. Upon information and belief, Defendant Fitzgerald manipulated her classroom door handle because most of the disabled students in her class, including B.H., opened the door by pulling down on the handle, and Defendant Fitzgerald understood that, by so manipulating the classroom door handle, the students with disabilities would be unable to open the door and be trapped within the classroom and unable to leave.

40. Upon information and belief, KH understood this manipulation of the classroom door to be an aversive intervention and mechanical restraint and reported it to Defendant Lewis.

41. Upon information and belief, neither Defendant Fitzgerald nor any other CCSD employee was ever disciplined by Defendant Lewis for manipulating her classroom door handle so that students with disabilities could not open the door, resulting in the continuation of that practice and ratifying its use, despite the fact that it constitutes an aversive intervention and a dangerous violation of safety rules.

42. Upon information and belief, Defendant Fitzgerald's manipulation of her classroom door handle was never properly documented in a CCF-624 form.

43. Defendant Fitzgerald regularly used corporal punishment on her students, including B.H.

44. TB reported that she had seen Defendant Fitzgerald "grab" some of the children, including B.H., by the wrist or hand, and pinch and squeeze in between the children's index finger and thumb (hereinafter, "grabbing" technique) until they behaved and/or in order to discipline them.

45.     The "grabbing" technique utilized by Defendant Fitzgerald is an improper aversive intervention that Fitzgerald used to cause pain and punish or discipline her students for behavioral issues.

46.     B.H. suffered physical pain and mental anguish each time Defendant Fitzgerald used the "grabbing" technique on B.H.'s hand.

47.     CCSD documented via a CCF-624 form an incident in which Defendant Fitzgerald used the "grabbing" technique on B.H., which occurred on September 29, 2022. It was reported that B.H. was observed to be hurt, crying, and holding her hand between her thumb and pointer finger afterward.

48.     Upon information and belief, Defendant Fitzgerald instructed other teachers and teachers' aides in how to properly employ this improper "grabbing" technique to get students to comply and/or to discipline them.

49.     Defendant Fitzgerald told an investigator from CCSDPD that she readily used the "grabbing" technique, pinching and squeezing students in between their thumb and index finger, and that it was a regular practice of hers to gain compliance and/or to discipline students.

50.     Upon information and belief, Defendant Fitzgerald learned this "grabbing" technique from a CCSD-approved occupational therapy training.

51.     B.H. is a Black/African American student.

52.     During the 2022-2023 academic school year, another staff member at Edith Garehime Elementary School (hereinafter "MS") witnessed Defendant Fitzgerald yell at B.H. to listen to the "big black lady," referring to KH, a Black/African American staff member.

53.     On another day during the 2022-2023 academic school year, B.H. did not pick up puzzle pieces immediately when asked by Defendant Fitzgerald; however, after KH instructed B.H. to do the same and B.H. complied, Defendant Fitzgerald told B.H., "oh, you listen to the black lady."

54.     On another occasion during the 2022-2023 academic school year, TB, a Black/African American staff member, was sweeping the floor in the classroom when Defendant Fitzgerald told the students to move out of the way and "let the Help sweep the floor."

55.     On August 19, 2022, at 6:48 P.M., TB emailed the Special Education Instructional Facilitator at Edith Garehime Elementary School (hereinafter "SO"), concerning incidents during which she witnessed Defendant Fitzgerald abusing and/or neglecting students in Fitzgerald's classroom.

56.    On August 19, 2022, at 7:40 P.M., SO confirmed receipt of TB's email, which alleged abusive and neglectful acts by Defendant Fitzgerald.

57.    SO encouraged TB to set up a meeting with Defendant Lewis concerning the allegations against Defendant Fitzgerald, which SO said she would attend with TB.

58.    SO corroborated to CCSDPD most of the allegations from TB regarding Defendant Fitzgerald, acknowledging that there had been issues of abuse and neglect brought to her attention concerning Defendant Fitzgerald.

59.    Upon information and belief, a meeting between TB, SO, and Defendant Lewis occurred sometime after TB informed SO and Defendant Lewis about the allegations concerning Defendant Fitzgerald.

60.    Upon information and belief, SO reported that SO has had improper training from CCSD during the 2022-23 school year regarding "notifications."

61.    Any CCSD employee that intentionally uses an aversive intervention is subject to disciplinary action, pursuant to State law and CCSD policy.

62.    CCSD requires all staff members to fill out a CCF-624 form not later than one working day after becoming aware of the use of an aversive intervention against a student.

63.    CCSD also requires notice to parents for each and every CCF-624 form that is filled out concerning an aversive intervention used against their child with a disability.

64.    Defendant Perryman instructed SO to fill out and back date a CCF-624 form for every allegation concerning Defendant Fitzgerald.

65.    Defendant Perryman only advised SO to fill out and back date the CCF-624 forms once CCSDPD had begun investigating the allegations against Defendant Fitzgerald, on or around October 13, 2022.

66.    SO followed the directions of her superior, Defendant Perryman, completing a CCF-624 for every allegation of abuse or neglect against Defendant Fitzgerald, totaling over thirty CCF-624 forms, and back-dating each one of them.

67.    SO admitted that, in violation of CCSD policy, she did not contact CPS, CCSDPD, or any other authority when she learned of the allegations of abuse concerning Defendant Fitzgerald.

68.     Although CCSD was aware no later than August 19, 2022, of dozens of allegations that Defendant Fitzgerald had abused and neglected students, including B.H., CCSD did not inform Sirbrina Bell, B.H.'s mother, of Defendant Fitzgerald's conduct until months later, on October 13, 2022.

69.     After determining that an aversive intervention has occurred, CCSD is required to develop a corrective plan within thirty days to submit to the Nevada Department of Education to prevent future violations.

70.     Upon information and belief, a corrective plan was never timely submitted to the Nevada Department of Education for any of the aversive interventions used against B.H. by Defendant Fitzgerald.

71.     Upon information and belief, on October 13, 2022, Defendant Fitzgerald was finally removed from the classroom.

72.     Upon information and belief, during the course of CCSDPD's investigation that began on October 13, 2022, Defendant Perryman provided documents to CCSD on or around November 3, 2022, which prompted CCSDPD to re-interview several witnesses because of new information contained in documents sent by Defendant Perryman.

73.     CCSDPD ultimately concluded that Defendant Fitzgerald had violated CCSD policy.

74.     In its Incident Report, CCSDPD noted there were "some concerning activities both by [Defendant] Lewis (when reported to by staff), as well as the region superintendent [Defendant] Perryman, as well as other district personnel" during the course of the investigation.

75.     CCSDPD further reported that the thirty-plus CCF-624 forms created after the start of the investigation appeared to be "an attempted cover-up of failings throughout, from the SPTA, to the Special Ed Facilitator, through the Principal and to the Region."

76.     Upon information and belief, as of February 2, 2023, Defendant Lewis was no longer employed as the Principal at Edith Garehime Elementary School and had been reassigned to other duties by Defendant CCSD.

77.     Upon information and belief, as of March 20, 2023, Defendant Fitzgerald was returned to the classroom by CCSD and is once again employed as a teacher at Edith Garehime Elementary School.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**Assault**

**(Against Defendant FITZGERALD)**

78.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

79.     By regularly using the "grabbing" technique, pinching B.H. in the web of her hand between her thumb and index finger, and taking other actions as set forth herein, CCSD and its employees caused B.H. to feel apprehension of harmful or offensive contact, which constituted assault.

80.     B.H. was observed crying and in pain when Defendant Fitzgerald would employ the "grabbing" technique on B.H.

81.     By repeatedly using the "grabbing" technique on B.H., CCSD and its employees have caused and continue to cause B.H. to feel apprehension of imminent harmful or offensive contact, which constitutes repeated assaults.

82.     Defendant Fitzgerald's unlawful assault of B.H. was reasonably foreseeable to CCSD under the circumstances, considering the nature and scope of Fitzgerald's employment, the frequency of its use in the classroom, and her ongoing efforts to train other CCSD employees to use the "grabbing" technique in order to punish, discipline or gain compliance from students with disabilities.

83.     As a direct and proximate result of the intentional acts of CCSD and its employees, B.H. sustained physical, mental, and emotional injuries due to the unprovoked and disproportionate harm to her person by Fitzgerald and/or other CCSD employees, thus causing B.H. to suffer from severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature, all to her general and compensatory damage.

84.     Plaintiff was required to incur expenses for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

85.     As a direct and proximate cause of the intentional acts of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint

1    is requested, so that this amount can be introduced so as to conform to proof at time of trial.

2          86.    As a further proximate result of Defendant's intentional acts, Plaintiff was forced to retain

3    the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this

4    matter.

5                              **SECOND CAUSE OF ACTION**

6                                    **Battery**

7                         **(Against Defendant FITZGERALD)**

8          87.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set

9    forth herein.

10         88.    By regularly, and without any legitimate educational purpose, employing the "grabbing"

11   technique, pinching and squeezing B.H. in the web of her hand, CCSD and its employees made an

12   intentional, unlawful, offensive and harmful contact with B.H.'s body, which constitutes a battery.

13         89.    Defendant Fitzgerald's unlawful battery of B.H. was reasonably foreseeable to CCSD

15   under the circumstances, considering the nature and scope of Fitzgerald's employment, the frequency of its

16   use in the classroom, and her ongoing efforts to train other CCSD employees to use the "grabbing" technique

17   in order to punish, discipline, or gain compliance from disabled students.

18         90.    As a result of the battery committed by CCSD and its employees, B.H. sustained physical,

19   mental and emotional injuries, and, due to the attacks on her person by Defendant Fitzgerald and/or other

20   CCSD employees, B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of

21   which may be permanent in nature, all to her general and compensatory damage.

22         91.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in

23   an amount unknown at this time, and will be required to incur expenses in the future for medical and

24   psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount

25   can be introduced so as to conform to proof at time of trial.

26         92.    As a direct and proximate cause of the intentional acts of CCSD and its employees,

27   Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will

28   continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint

     is requested, so that this amount can be introduced so as to conform to proof at time of trial.

93.     As a further proximate result of Defendant's intentional acts, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

**THIRD CAUSE OF ACTION**

**Negligence**

**(Against All Defendants)**

94.     Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

95.     Chapter 391 of the Nevada Administrative Code, Chapters 385, 388, 391, and 432B of the Nevada Revised Statutes, and the common law of the State of Nevada, impose a duty of reasonable professional judgment and reasonable care upon CCSD and its employees in carrying out their responsibilities.

96.     NRS 392.4633(3) defines corporal punishment as the "intentional infliction of physical pain or the physical restraint of a pupil for disciplinary purposes."

97.     NRS 392.4633(1) prohibits the use of corporal punishment upon a pupil in any public school.

98.     NRS 392.4633(1) is intended to protect students from the type of injury, abuse, and intimidation that was suffered by B.H.

99.     CCSD and its employees committed negligence *per se* by inflicting corporal punishment upon B.H. repeatedly during the 2022-2023 academic school year.

100.     CCSD and its employees breached the duty of care that was owed to B.H. by repeatedly and without any justification (a) using corporal punishment on her, (b) leaving her and other students alone for extended periods of time, (c) leaving her in a closed bathroom with the lights off for an extended period of time, and (d) allowing the door handle to the classroom to be manipulated, creating safety issues as well as operating as a mechanical restraint, to prevent disabled students from leaving the classroom when Fitzgerald chose to leave them alone.

101.     CCSD and its employees breached the duty of care that was owed to B.H. by attempting to conceal and cover-up the abuse and neglect that occurred in Defendant Fitzgerald's

classroom.

102.    CCSD ratified the unlawful and improper acts of its employees by failing to impose proper discipline on them and by failing to make clear that the use of corporal punishment and mechanical restraint against students with disabilities violates CCSD policy and State law.

103.    As a direct and proximate result of the negligence of CCSD and its employees, B.H. sustained physical, mental and emotional injuries, and B.H. suffered severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature, all to her general and compensatory damage.

104.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

105.    As a direct and proximate cause of the negligence of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

106.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

### FOURTH CAUSE OF ACTION

**Negligent Hiring, Training and Supervision**

**(Against Defendants CCSD, LEWIS, and PERRYMAN)**

107.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

108.    Chapter 391 of the Nevada Administrative Code, Chapters 385, 388, 391, and 432B of the Nevada Revised Statutes, and the common law of the State of Nevada, impose a duty of reasonable professional judgment and reasonable care upon CCSD and its employees in carrying out their responsibilities pursuant to Nevada State law.

109.    CCSD has a duty to properly hire, train, and supervise each of its employees, staff, and/or

other agents, including Defendant Fitzgerald and any other TOR and/or aide working for or under the direction of CCSD who interacted with B.H. at Edith Garehime Elementary School during the times relevant to the allegations herein.

110.    CCSD's failure to properly hire, train and supervise each of its employees, staff, and/or other agents resulted in (a) the use of corporal punishment on B.H., (b) leaving B.H. and other students alone for extended periods of time, and (c) leaving B.H. in a closed bathroom with the lights off for an extended period of time and (d) allowing the door handle to the classroom to be manipulated, creating safety issues as well as operating as a mechanical restraint, to prevent disabled students from leaving the classroom when Fitzgerald chose to leave them alone.

111.    CCSD breached its duties to B.H. by negligently hiring an employee who repeatedly abused and neglected B.H. during the 2022-2023 academic school year.

112.    CCSD knew or should have known that Defendant Fitzgerald was violently inclined, was careless, was prone to use corporal punishment and unlawful mechanical restraint, likely to lead to injuries to a student, and was prone to leaving disabled children alone and unattended for extended periods of time.

113.    CCSD breached its duties to B.H. by negligently hiring an employee as a Special Education Instructional Facilitator of an elementary school (SO) who admittedly learned of abuse taking place in Defendant Fitzgerald's classroom during the 2022-2023 academic school year, but who failed to document or report this to CCSDPD, CPS, B.H.'s parent, CCSD superiors, or anyone else.

114.    CCSD breached its duties to B.H. by negligently hiring an employee as a Principal of an elementary school (Defendant Lewis) who failed to reasonably monitor or supervise his staff, failed to properly document aversive interventions, and failed to discipline school employees for violating CCSD policies and State law.

115.    CCSD breached its duties to B.H. by negligently hiring a School Associate Superintendent (Defendant Perryman) who failed to reasonably monitor or supervise her staff, and failed to properly document aversive interventions, and failed to discipline school employees for violating CCSD policies and State law.

116.    CCSD breached its duties to B.H. by negligently failing to properly train its employees in the use of aversive interventions, the need to properly document and report aversive interventions, the

imposition of unlawful mechanical restraints, and in relation to the State prohibition against the use of corporal punishment on a student, particularly a vulnerable child who suffers from severe autism and is unable to communicate.

117.    CCSD breached its duties to B.H. by negligently supervising employees like Defendant Fitzgerald who openly used improper aversive interventions and corporal punishment against B.H. and trained other CCSD employees in how to use the "grabbing" technique, and who routinely left B.H. and other students with disabilities alone, without any supervision, for extended periods of time.

118.    CCSD ratified the unlawful and improper acts of its employees by failing to impose proper discipline on them and by failing to make clear that the use of corporal punishment and mechanical restraint against students with disabilities violates CCSD policy and State law.

119.    CCSD and its employees breached the duty of care that was owed to B.H. by attempting to conceal and cover-up the abuses and neglect that occurred in Defendant Fitzgerald's classroom.

120.    As a direct and proximate result of the negligent hiring, training, and supervision practices of CCSD and its employees, B.H. sustained physical, mental, and emotional injuries, and B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature, all to her general and compensatory damage.

121.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

122.    As a direct and proximate cause of the negligent hiring, training, and supervision of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

123.    As a further proximate result of Defendant's negligent hiring, training, and supervision, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

1

**FIFTH CAUSE OF ACTION**

2

**Intentional Infliction of Emotional Distress**

3

**(Against Defendants CCSD and FITZGERALD)**

4        124.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set

5    forth herein.

6        125.    Nevada law entitles a plaintiff to obtain damages for intentional infliction of emotional

7    distress if the plaintiff establishes (a) that the defendant used extreme and outrageous conduct with the

8    intention of, or a reckless disregard for, causing emotional distress, (b) that the plaintiff actually suffered

9    severe or extreme emotional distress, and (c) that the extreme conduct used by defendant actually or

10   proximately caused the emotional distress.

11       126.    As set forth above, during the relevant time period, CCSD and its employees (a) used

12   corporal punishment on B.H., (b) left B.H. and other students alone in the classroom for extended periods of

13   time, (c) placed B.H. in a closed bathroom alone with the lights off, and (d) manipulated the handle of the

15   classroom door, creating a safety hazard and causing an unlawful mechanical restraint.

16       127.    An assault and battery of a disabled child, by itself, is an example of extremely outrageous

17   conduct.

18       128.    CCSD and its employees intended to cause B.H. emotional distress by using the conduct

19   described herein, or acted with a reckless disregard for the potential that their conduct would cause B.H.

20   emotional distress.

21       129.    As a direct and proximate result of the intentional acts of CCSD and its employees, B.H.

22   sustained physical, mental, and emotional injuries, and B.H. suffered from severe terror, pain and suffering,

23   and severe mental anguish, some of which may be permanent in nature.

24       130.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in

25   amount unknown at this time, and will be required to incur expenses in the future for medical and

26   psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount

27   can be introduced so as to conform to proof at time of trial.

28       131.    As a direct and proximate cause of the intentional acts of CCSD and its employees,

Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will

continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

132.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

## SIXTH CAUSE OF ACTION

### Violation of Constitutional Right to Substantive Due Process

### (Against All Defendants)

133.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

134.    By their actions as described herein, the Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution of the State of Nevada and the Constitution of the United States of America, as well as law of the State and Federal government. In particular, as a student in a public school, B.H. has a liberty interest in personal security and freedom from infliction of pain.

135.    As set forth above, during the relevant time period, CCSD and its employees (a) used corporal punishment on B.H., (b) left B.H. and other students alone for extended periods of time, (c) placed B.H. in a bathroom with the door closed by herself with the lights off., (d) manipulated the handle of a classroom door, creating a safety hazard and causing an unlawful mechanical restraint, and (e) ratified the improper abuse, neglect and misconduct as alleged herein.

136.    The forms of abuse and negligence that were committed by CCSD against B.H., as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada.

137.    CCSD used the improper and unlawful practices described herein on B.H. in part in an attempt to punish and/or discipline her for her disability and for her actions, such as singing, her inability to stay on task, and her echolalia.  The actions for which B.H. was being punished by CCSD were all characteristics of her disability and occurred because of her disability.

138.    The actions of Defendants, as described above, including, but not limited to, the repeated use of corporal punishment and mechanical restraint against disabled children, the repeated failure to report

or document the uses of corporal punishment and mechanical restraint, and the attempts to conceal or cover-up these unlawful acts violated State law and CCSD's own written policies.

139.    The actions taken, or not taken, in response to Defendant Fitzgerald's conduct by Defendant Perryman, Defendant Lewis, and CCSD amounted to the adoption of the practices, customs, or policies being used by Defendant Fitzgerald during the 2022-2023 academic school year.

140.    CCSD knew, or should have known, about the intentional and abusive practices being used by employees against B.H. and other students, which are so well-known as to constitute a custom or usage at Edith Garehime Elementary School, as well as other schools within CCSD. Nonetheless, CCSD failed to take affirmative action to provide for the safety and well-being of B.H. and the students in her class.

141.    CCSD employees and officers/administrators attempted to conceal and cover-up the abuses and neglect that occurred in Defendant Fitzgerald's classroom.

142.    As a direct and proximate result of the intentional and negligent acts of CCSD and its employees, B.H. sustained physical, mental, and emotional injuries, and B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature.

143.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

144.    As a direct and proximate cause of the intentional and negligent acts of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

145.    CCSD's actions, and that of its employees, were malicious, deliberate, intentional, oppressive, and wanton, and were embarked upon with the knowledge of, or in conscious disregard to, the harm that would be inflicted upon B.H. As a result of said intentional conduct, B.H. is entitled to an award of exemplary/punitive damages to punish Defendants and to deter others from similar conduct.

146.    Defendants, and each of them, have, acting under the color of State law, deprived B.H. of the rights, privileges, or immunities secured to her by the Constitution of the State of Nevada, Article I, § 2

and § 9, the Constitution of the United States of America, and 42 U.S.C. § 1983.

147.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

**SEVENTH CAUSE OF ACTION**

**Violation of Constitutional Right to Equal Protection**

**(Against All Defendants)**

148.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

149.    The actions of Defendants, as set forth herein, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and Article I, § 9 of the Constitution of the State of Nevada, in that such actions are not inflicted upon other students in CCSD who do not suffer from disabilities.

150.    As set forth above, during the relevant time period, CCSD and its employees (a) used corporal punishment on B.H., (b) left B.H. and other students alone for extended periods of time, (c) placed B.H. in a bathroom with the door closed by herself with the lights off., and (d) manipulated the classroom door handle, creating a safety hazard as well as causing an unlawful mechanical restraint.

151.    The forms of abuse and negligence that were committed by CCSD against B.H., as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada, constituting a violation of equal protection.

152.    CCSD employees and officers/administrators attempted to conceal and cover-up the abuses and neglect that occurred in Defendant Fitzgerald's classroom.

153.    On October 30, 2022, an aide (hereinafter, "C.G.") that worked in Defendant Fitzgerald's special education classroom during the prior school year (2021-2022) provided Defendant Perryman with a written statement memorializing her concerns from working with Defendant Fitzgerald. In this statement, C.G. expressed that Defendant Fitzgerald "was always yelling/screaming at kids (daily) especially at students who were more or less considered not preferred or desirable per her actions and verbal comments (as they were lower in academics/mental capacity, more challenging." Per C.G., this would often continue "to the point kids would cry."

154.    Per C.G.'s October 30, 2022 statement, "Admin was well aware of her yelling at students because she did it in their presence (many times) in and out of the classroom."

155.    C.G. stated that Defendant Fitzgerald disfavored certain students, often those with lesser capabilities; in fact, C.G. remarked that Defendant Fitzgerald "was definitely stricter and had less tolerance." While C.G. acknowledged that those students with greater disabilities could be tough and exhausting, "the difference is that I [C.G.] did not treat them differently or badly."

156.    Additionally, C.G. stated that she witnessed Defendant Fitzgerald pinch and squeeze students' hands, as well as flick their face and grabbing their upper arms. C.G. explained that Defendant Fitzgerald would say this was the only way to get their students – all of whom were students with disabilities – to listen. C.G. explicitly stated that there were "definitely questionable situations and daily interactions as to how she interacted with all our SPED kids."

157.    In October 2022, Defendant Fitzgerald was temporarily removed from her position while CCSD Police Department and Child Protective Services investigated the allegations of misconduct involving B.H. and other students with disabilities.

158.    In March 2023, CCSD made the decision to reinstate Defendant Fitzgerald to a teaching position at Garehime Elementary School; however, Defendant Fitzgerald was placed in a general education position to teach students without disabilities, rather than students with disabilities.

159.    Despite being placed in a position away from students with disabilities, in April 2023, Defendant Fitzgerald improperly restrained a student with a disability in a hallway at Garehime Elementary School.

160.    Upon information and belief, Defendant Fitzgerald never abused and neglected the students without disabilities at Garehime Elementary School, a public school in Clark County, Nevada.

161.    As a direct and proximate result of the intentional and negligent acts of CCSD and its employees, B.H. sustained physical, mental, and emotional injuries, and B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature, all to her general and compensatory damage.

162.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in

an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

163.    As a direct and proximate cause of the intentional and negligent acts of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

164.    CCSD's actions, and that of its employees, were malicious, deliberate, intentional, oppressive, and wanton, and were embarked upon with the knowledge of, or in conscious disregard to, the harm that would be inflicted upon B.H. As a result of said intentional conduct, B.H. is entitled to an award of exemplary/punitive damages to punish Defendants and to deter others from similar conduct.

165.    Defendants, and each of them, have, acting under the color of State law, deprived B.H. of the rights, privileges, or immunities secured to her by the Constitution of the State of Nevada, Article I, § 2 and § 9, the Constitution of the United States of America, and 42 U.S.C. § 1983.

166.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter.

**EIGHTH CAUSE OF ACTION**

**Violation of Constitutional Protections for Disabled Persons**

**(Against Defendant CCSD)**

167.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

168.    B.H. is a disabled person as defined in NRS 426.068.

169.    Title II of the ADA, 42 U.S.C. § 12131, *et seq*., the regulations promulgated thereunder, and 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities like CCSD. The ADA prohibits the exclusion from participation in, being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

170.    Article I, § 9 of the Constitution of the State of Nevada and Nevada statute likewise

protects persons from discrimination on the basis of disability by public entities like CCSD. Nevada law prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

171.    As set forth above, during the relevant time period, CCSD and its employees (a) used corporal punishment on B.H., (b) left B.H. and other students alone for extended periods of time, (c) placed B.H. in a bathroom with the door closed by herself with the lights off and (d) manipulated the classroom door handle, creating a safety hazard, and causing an unlawful mechanical restraint. In light of the factual background, these actions would be deemed unlawful and/or retaliatory under Chapter 42 of the United States Code and Chapter 388 of the Nevada Revised Statutes.

172.    The forms of abuse and negligence that were committed by CCSD against B.H. as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada, and this violates the prohibition against discrimination solely on the basis of a disability.

173.    Defendants, and each of them, have violated B.H.'s rights under the ADA and the regulations promulgated thereunder by committing the outrageous intentional acts and other acts of negligence described herein, denying B.H. the benefits of the services, programs, and activities to which she is otherwise entitled from CCSD.

174.    CCSD employees and officers/administrators attempted to conceal and cover-up the abuses and neglect that occurred in Defendant Fitzgerald's classroom.

175.    As a direct and proximate result of the intentional and negligent acts of CCSD and its employees, B.H. sustained physical, mental, and emotional injuries, and B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of which may be permanent in nature.

176.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial.

177.    As a direct and proximate cause of the intentional and negligent acts of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life,

and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

178.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter pursuant to 42 U.S.C. § 12133.

## NINTH CAUSE OF ACTION

### Abuse of a Vulnerable Person/Enhanced Damages

### (Against Defendant FITZGERALD)

179.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set forth herein.

180.    At all times relevant to the allegations of this Complaint, B.H. was a "vulnerable person," according to Nevada law, in that she suffers from severe Autism Spectrum Disorder, a physical or mental impairment that substantially limits one or more of the major life activities of the person, and she has a medical or psychological record of the impairment. NRS 41.1395(1)(e).

181.    Because of the critical needs to protect vulnerable persons from abuse and exploitation, the Nevada legislature has enacted a law that provides that if a vulnerable person suffers a personal injury or death that is caused by abuse or neglect, the person who caused the injury, death or less is liable to the vulnerable person for two times the actual damages incurred by the vulnerable person.

182.    Defendant Fitzgerald committed acts of abuse against B.H., a vulnerable person, when she used the "grabbing" technique on B.H. repeatedly and left her in a bathroom alone with the lights off, which caused B.H. pain, physical injury, and severe mental anguish.

183.    Defendant Fitzgerald acted with recklessness, oppression, fraud, and/or malice, in the acts of abuse she committed against B.H., and, pursuant to NRS 41.1395(2), the Court should Order her to pay all of the attorney's fees and costs incurred by B.H. in this proceeding.

184.    This Court should enter an award of enhanced damages to B.H. pursuant to NRS 41.1395(1) against Defendant Fitzgerald.

/ / /

/ / /

1

2

3

**TENTH CAUSE OF ACTION**

**Violation of the Rehabilitation Act of 1973**

**(Against Defendant CCSD)**

4      185.    Plaintiff hereby adopts and incorporates by reference all prior paragraphs as if fully set

5  forth herein.

6      186.    The Rehabilitation Act § 504 forbids organizations that receive federal funding,

7  including public schools, from discriminating against people with disabilities. Section 504 provides

8  that "…no otherwise qualified individual with a disability…shall solely by reason of her or his

9  disability, be excluded from the participation in, be denied the benefits of, or be subjected to

10  discrimination under any program or activity receiving Federal financial assistance."

11      187.    Defendant CCSD is a recipient of federal funding for its educational programs,

12  activities and services.

13      188.    By virtue of her age and having been diagnosed as suffering from the condition of

14  autism, Plaintiff is a qualified person with a disability.

15

16      189.    Defendant CCSD has violated 34 C.F.R. § 104.33(b)(1).

17      190.    Defendant CCSD has denied Plaintiff meaningful access to its educational programs,

18  activities and services by failing to investigate complaints of abuse and neglect of Plaintiff as a non-

19  verbal student prior to October 13, 2022, and failing to enforce the rules that are intended to prevent

20  the abuse and neglect of disabled students.. CCSD failed to investigate written allegations by a CCSD

21  employee that B.H. was subjected to multiple acts of abuse and neglect (being the victim of the

22  "grabbing" technique,  and being forced into a bathroom alone with the lights off, etc.). CCSD failed

23  to appropriately discipline Defendant Fitzgerald for the acts of abuse and neglect committed by

24  Defendant Fitzgerald, as set forth hereinabove. CCSD failed to notify appropriate authorities of these

25  abuse and neglect allegations, concealing suspected abuse and neglect for nearly two months.

26      191.    Defendant CCSD exhibited willful indifference to Plaintiff's rights as a qualified

27  student with a disability by failing to implement policies and procedures to ensure that allegations of

28  neglect and abuse of students with disabilities were investigated promptly in an objective and

impartial manner.

192.    Defendant CCSD was notified in writing by TB, a CCSD employee, that Plaintiff had been subjected to multiple acts of aversive intervention and corporal punishment by Defendant Fitzgerald, as detailed hereinabove, between at least August 8, 2022, and August 19, 2022. Defendant CCSD failed to do anything to document or record these allegations of abuse and neglect against B.H., failed to investigate these allegations, actively concealed the allegations from B.H.'s parent, and failed to impose discipline on anyone for the acts of abuse that were witnessed and reported by TB.

193.    As a direct and proximate result of the conduct of CCSD and the policy put in place at Edith Garehime Elementary School, allegations of mistreatment and abuse against B.H. by CCSD employees during the Fall of 2022 were effectively buried and concealed, so that no investigations were performed, no reports (CCF-624 forms) were prepared for each of these acts of abuse and neglect, and no employees were held accountable.

194.    As a direct and proximate result of the conduct of CCSD and the policy put in place at Edith Garehime Elementary School, B.H. continued to be exposed to abusive and neglectful conduct by her teacher for nearly two months, causing her to suffer physical and psychological harm. Due to the extensive abuse and neglect by Defendant Fitzgerald, B.H. suffered from severe terror, pain and suffering, and severe mental anguish, some of which will be permanent in nature, all to her general and compensatory damage in an amount to be proven at trial.

195.    Plaintiff was required to incur expenses for medical and psychological/psychiatric care in an amount unknown at this time, and will be required to incur expenses in the future for medical and psychological/psychiatric care and treatment. Leave to amend this Complaint is requested so that this amount can be introduced so as to conform to proof at time of trial, and these special damages will be in an amount to be proven at trial.

196.    As a direct and proximate cause of the intentional and negligent acts of CCSD and its employees, Plaintiff endures pain and suffering, anxiety, emotional distress, and loss of enjoyment of life, and will continue to endure such losses for an indefinite period of time in the future. Leave to amend this Complaint is requested, so that this amount can be introduced so as to conform to proof at time of trial.

197.    As a further proximate result of Defendant's negligence, Plaintiff was forced to retain

the services of attorneys in this matter and should be awarded all attorney's fees and costs incurred in this matter pursuant to the Rehabilitation Act of 1973.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants, and each of them, as follows:

1.      For general damages in excess of Seventy-Five Thousand Dollars ($75,000.00), according to proof upon trial;

2.      For special damages in excess of Seventy-Five Thousand Dollars ($75,000.00), according to proof upon trial;

3.      For reasonable attorney's fees incurred herein;

4.      For Plaintiff's costs and disbursements of this suit;

5.      For an award of enhanced damages against Defendant Fitzgerald, pursuant to NRS 41.1395(1);

6.      For an award of punitive/exemplary damages, as Defendants acted oppressively and maliciously in repeatedly violating B.H.'s rights by repeatedly committing acts of corporal punishment against her and thereafter concealing such abuse for months;

7.      For such further relief as this Court may deem just and equitable.

## VII.     DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury on all issues so triable.

Dated this 8th day of January, 2024.

**ARIAS SANGUINETTI WANG & TEAM LLP**

*/s/ Gregg A. Hubley*
GREGG A. HUBLEY, ESQ., NBN 7386
CHRISTOPHER A.J. SWIFT, ESQ. NBN 11291
7201 W. Lake Mead Boulevard, Suite 570
Las Vegas, Nevada 89128

MARIANNE C. LANUTI, ESQ., NBN 7784
LAW OFFICES OF MARIANNE C. LANUTI
658 Falcon Summit Ct.
Henderson, Nevada 89012

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am employed in the County of Clark, State of Nevada, am over the age of 18 years and not a party to this action. My business address is that of **Arias Sanguinetti Wang & Team LLP** 7201 W. Lake Mead Blvd., Suite 570, Las Vegas, Nevada 89128:

### FIRST AMENDED COMPLAINT FOR DAMAGES

(x) I electronically served copies of the above-referenced document(s) via CM/ECF notice of electronic filing to the following:

| | |
|---|---|
| Service Contacts: | **On Behalf of Plaintiffs:**<br>Gregg Hubley (gregg@aswtlawyers.com)<br>Marianne Lanuti (NVkidslaw@gmail.com)<br>Jasminn Hernandez (jasminn@aswtlawyers.com)<br>Christopher Swift (christopher@aswtlawyers.com)<br>Alex Ballard (alex@aswtlawyers.com)<br>Emily Grable (emily@aswtlawyers.com)<br>Emily Smith (smithe@aswtlawyers.com)<br>Bryan Tamayo (bryan@aswtlawyers.com)<br>Efile desk (efile@hubleylawltd.com)<br><br>**On Behalf of Defendants Ryan Lewis & Kathryn Fitzgerald:**<br>Jacqueline Victoria Nichols (jnichols@maclaw.com)<br>Krista Busch (kbusch@maclaw.com)<br>Craig R. Anderson (canderson@maclaw.com)<br><br>**On Behalf of Defendants Clark County School District & Scarlett Perryman:**<br>Stephanie A. Barker (sbarker@ocgas.com)<br>Thomas D. Dillard (tdillard@ocgas.com)<br>Linda Roth (lroth@ocgas.com)<br>Nan Langenderfer (nlangenderfer@ocgas.com)<br>Jessica Kaufman (jkaufman@ocgas.com) |

I certify under penalty of perjury that the foregoing is true and correct and that this Certificate of Service was executed by me on January 8, 2024, at Las Vegas, Nevada.

/s/ Bryan Tamayo
An Employee of **ARIAS SANGUINETTI WANG & TEAM LLP**