1
2
3
4                          UNITED STATES DISTRICT COURT
5                                DISTRICT OF NEVADA
6                                       * * *
7   B.H., a minor by and through her Parent          Case No.2:23-CV-564  JCM (DJA)
    Sirbrina Bell,
8
                                 Plaintiff(s),                    ORDER
9
             v.
10
    CLARK COUNTY SCHOOL DISTRICT, et al.,
11
                                 Defendant(s).
12

13

14        Presently before the court is defendant Scarlett Perryman ("Perryman") and defendant

15  Clark County School District's ("CCSD") motion for partial summary judgment.  (ECF No. 53).

16  Defendants Ryan Lewis ("Lewis") and Kathryn Fitzgerald ("Fitzgerald") joined Perryman and

17  CCSD  (collectively "defendants").  (ECF Nos. 59; 60).  Plaintiffs B.H. and Sirbrina Bell filed a

18  response (collectively "plaintiffs") (ECF No. 68), to which Perryman and CCSD replied (ECF No.

19  74).  Lewis and Fitzgerald joined Perryman and CCSD's reply.  (ECF No. 76).

20        Also before the court is Perryman and CCSD's motion for partial judgment on the

21  pleadings; Lewis and Fitzgerald joined the motion.  (ECF Nos. 56; 59; 60).

22        Plaintiffs filed a response (ECF No. 65), to which Perryman and CCSD replied; Lewis and

23  Fitzgerald joined.  (ECF Nos. 66; 69).

24        Also before the court is plaintiffs' motion for partial summary judgment.  (ECF No. 57).

25  Perryman and CCSD filed a response, which Lewis and Fitzgerald joined (ECF Nos. 67; 70), to

26  which plaintiffs replied (ECF No. 75).

27        Also before the court is Lewis and Fitzgerald's motion for partial summary judgment.

28  (ECF No. 63).  Perryman joined the motion in its entirety and CCSD joined the motion except for

Section III(C)(1) and Section III(D)(3).  (ECF No. 64).  Plaintiffs filed a response (ECF No. 72).

**I.    Background**

This case arises out of allegedly abusive treatment of B.H., a child with autism spectrum disorder.  (ECF No. 32 at 4).  At the time of the alleged incidents, B.H. was five years old and attending Edith Garehime Elementary School.  (*Id.* at 4–5).

Plaintiffs allege that B.H.'s special education teacher defendant Fitzgerald neglected and abused B.H.  This includes an instance where Fitzgerald allegedly: put B.H. in a dark bathroom because B.H. would not stop singing (*id.* at 5); regularly left her students, including B.H., alone in the classroom without any supervision (*id.* at 5–6); and regularly used corporal punishment on her students, including B.H.  (*Id.* at 6).  Regarding corporal punishment specifically, plaintiffs assert that Fitzgerald used a particular "grabbing" technique that she learned from a CCSD-approved occupational therapy training, and that technique inflicted physical pain and mental anguish each time it was used on B.H.  (*Id.* at 7).

Other CCSD employees witnessed Fitzgerald committing these acts and reported them to defendant Lewis, who was the principal of Garehime.  (*Id.* at 8).  Plaintiffs allege that Lewis failed to take appropriate action to remedy the issues with Fitzgerald, which would include filling out a CCF-624 form any time a CCSD employee intentionally uses an aversive intervention.  (*See id.* at 8).

Plaintiffs further allege that defendant Perryman, the Region 1 School Associate Superintendent of CCSD, instructed employees to prepare and backdate CCF-624 forms once the Clark County School District Police Department began an investigation of Fitzgerald.  (*Id.*).

The investigation noted that Fitzgerald had violated CCSD policy and that "there were 'some concerning activities by both [Defendant] Lewis (when reported [] by staff), as well as the region[al] superintendent [Defendant] Perryman, as well as other district personnel' during the course of the investigation."  (*Id.* at 9).  The investigation also suggested that the backdating of CCF-624 forms appeared to be "an attempted cover-up of failings throughout, from the SPTA, to the Special Ed Facilitator, through the Principal and to the Region."  (*Id.*).

. . .

- 2 -

Plaintiffs filed a ten-count amended complaint alleging a host of state and federal claims against Fitzgerald, Lewis, Perryman, and CCSD. (*Id.* at 10–25). The parties have filed numerous motions for summary judgment which the court will address now.

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Information may be considered at the summary judgment stage if it would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In considering evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

1  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2  versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

3    However, the nonmoving party cannot avoid summary judgment by relying solely on

4  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

5  1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

6  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

7  for trial. *See Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is merely colorable or

8  is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby,*

9  *Inc.*, 477 U.S. 242, 249–50 (1986).

10  **III.** **Discussion**

11    A. Section § 1983 claims

12    Plaintiffs' 42 U.S. § 1983 bring claims against the individual defendants as well as a

13  municipal claim against CCSD. To properly state a claim under § 1983, a plaintiff must prove

14  "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that

15  the alleged violation was committed by a person acting under the color of State law." *Long v.*

16  *Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48

17  (1988)).

18    To establish individual liability under § 1983, a plaintiff must show that the defendant

19  personally participated in the alleged constitutional deprivation rather than relying on a theory of

20  vicarious liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978);

21  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Government officials are responsible only

22  for their own actions; liability may not be premised on a supervisor's role or the conduct of

23  subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, a defendant is liable

24  under § 1983 only if they directly participated in the wrongful conduct or set "in motion a series

25  of acts by others which the actor knows or reasonably should know would cause others to inflict

26  the constitutional injury." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting

27  *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

28  . . .

1    Municipalities may be directly liable for constitutional violations under § 1983.  *Monell*,

2    436 U.S. at 690.  A municipality cannot be held liable under § 1983 merely because its employees

3    or agents caused an injury; rather, municipal liability arises only when the injury results from the

4    execution of an official policy or custom.  *Id.*  A plaintiff must demonstrate that, through its

5    deliberate conduct, the municipality was the "moving force" behind the alleged injury and shows

6    that the municipal action was taken with the requisite degree of culpability and bore a direct causal

7    link in the deprivation of federal rights.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520

8    U.S. 397, 404 (1997).  Such a policy may be established by demonstrating the existence of "(1) an

9    official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or

10   (4) a decision or act by a final policymaker."  *Horton by Horton v. City of Santa Maria*, 915 F.3d

11   592, 602–03 (9th Cir. 2019).

12   Whether a plaintiff is alleging individual or municipal liability, the first step in the analysis

13   is to determine whether a plaintiff's federally protected right has been infringed at all.  *City of Los*

14   *Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at

15   the hands of the individual [] officer, the fact that the departmental regulations might have

16   *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in

17   original).

18              1.   *Claim 6: Due process*

19                     i.   Excessive force theory

20   Plaintiffs allege that defendants violated B.H.'s substantive due process rights as protected

21   by the Fourteenth Amendment.  "The consequences of a teacher's force against a student at school

22   are generally analyzed under the 'reasonableness' rubric of the Fourth Amendment, although

23   historically courts applied substantive due process analysis under the Fourteenth Amendment's

24   'shocks the conscience' test."  *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1180

25   (9th Cir. 2007).   Indeed, "[i]t is clear that the Fourth Amendment applies in the school

26   environment."  *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 908 (9th Cir. 2003).  Thus,

27   claims brought against schools are most often brought under the Fourth Amendment rather than

28   the Due Process Clause.  *Id.*  Therefore, the court must first determine the relevant standard for

1    analyzing the conduct that allegedly violated B.H.'s constitutional rights.

2        In *Doe*, the court evaluated a school administrator's decision to use a physical disciplinary

3    measure on a young student after the student failed to comply with behavioral instructions. *Id.* at

4    907–08. The court held that the Fourth Amendment applies to government conduct undertaken

5    for "investigatory *or administrative purposes*." *Id.* at 909 (citation omitted) (emphasis in original).

6    Because the administrator's actions were aimed at maintaining order in the school environment

7    through disciplining the student, the court concluded the conduct was administrative in nature and

8    therefore fell within the scope of the Fourth Amendment. *Id.* The student's claim was found to be

9    appropriately brought under the Fourth Amendment as opposed to the Due Process Clause. *Id.*

10        The facts of *Doe* are analogous to those alleged here. Plaintiffs contend that defendant

11    Fitzgerald used excessive force against B.H. when she allegedly grabbed B.H. and placed her alone

12    in the bathroom. Defendants dispute whether Fitzgerald grabbed B.H. at all and assert that placing

13    B.H. in the bathroom was an effort to maintain order in the classroom because other special needs

14    students were sensitive to noise. Even when viewing the facts in the light most favorable to

15    plaintiffs, Fitzgerald's alleged actions resemble those of the defendant in *Doe* as she was acting in

16    an administrative capacity by maintaining order in the classroom. Accordingly, this case is

17    properly brought under the Fourth Amendment.

18        Plaintiffs did not assert an excessive force claim under the Fourth Amendment in their sixth

19    cause of action. Instead, they alleged only a violation of substantive due process. The court

20    concludes that plaintiffs have failed to sufficiently plead a § 1983 claim based on the Due Process

21    Clause, and therefore, as a matter of law, this claim must be dismissed.

22                    **ii.** Mandatory reporting theory

23        It is unclear whether plaintiffs are attempting to use NRS 432B.220, Nevada's mandatory

24    reporting statute, to establish a constitutional due process violation. To be thorough, the court will

25    briefly address this issue.

26        Plaintiffs allege that defendant Lewis was a mandatory reporter under Nevada law, and that

27    he should have reported Fitzgerald's actions—which plaintiffs allege constitute child abuse—"to

28    the school district's board of trustees, who must then work with the school to develop a correct

1    plan to prevent further violations." (ECF No. 68 at 4) (quoting NRS 388.508). Plaintiffs further

2    allege that Lewis was required to document and report Fitzgerald's actions to B.H.'s Individualized

3    Education Program team, B.H.'s parents, and the board of school trustees. (*Id.*).

4           Without determining whether Lewis was required to report Fitzgerald's actions or if he

5    failed to do so, the court finds that a failure to report child abuse under Nevada Law is not a basis

6    for a § 1983 claim. Plaintiffs appear to suggest that the state-created danger doctrine applies here.[1]

7    Other courts that have examined state-created danger as it relates to children have found no liability

8    where there is more danger than seen here. *See, e.g.*, *Estate of Pond v. Oregon*, 322 F. Supp. 2d

9    1161 (D. Or. 2004) (holding that the state's failure to protect a child does not trigger the danger

10   creation exception, unless affirmative steps were taken to increase the danger); *Pierce v. Delta*

11   *Cnty. Dep't. of Soc. Servs.*, 119 F. Supp. 2d 1139 (D. Co. 2000) (finding that failure to comply

12   with mandatory reporting and investigation provisions did not give rise to a state-created danger);

13   *Forrester v. Bass*, 397 F.3d 1047 (8th Cir. 2005) (concluding that that the failure to investigate a

14   report of child abuse, as required by law, and failing to remove a child from an abusive family

15   situation, do not constitute state-created danger).

16          Thus, if plaintiffs intended to use Nevada's mandatory reporting statute to assert a

17   constitutional violation under § 1983, they have failed to do so.

18                    2. *Claim 7: Equal protection*

19          "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

20   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

21   direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

22   *Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). "To state

23   a claim under 42 U.S.C. § § 1983 for a violation of the Equal Protection Clause of the Fourteenth

24   Amendment a plaintiff must show that the defendants acted with an intent or purpose to

25   _____

26          [1] To establish a state created danger claim, a plaintiff must show that the state actor acted with deliberate indifference to a known or obvious danger. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). This

27   is a stringent standard of fault, requiring evidence that the official actually recognized an unreasonable risk and then consciously disregarded that risk, thereby exposing plaintiff to harm. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). "The state actor must 'recognize an unreasonable risk and actually intend to expose the plaintiff to such

28   risks without regard to the consequences to the plaintiff." *Martinez v. City of Clovis*, 943 F.3d 1260, 1274 (9th Cir. 2019)

1    discriminate against the plaintiff based upon membership in a protected class." *Barren v.*
2    *Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154 (1999).
3    "Discriminatory purpose implies more than intent as volition or intent as awareness of
4    consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action
5    at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."
6    *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir. 2001) (cleaned up).

7        Plaintiffs argue that their equal protection claim should be analyzed under the "class of
8    one" theory. The Supreme Court has held that equal protection claims can be properly brought by
9    a "class of one," where the plaintiff claims to have been intentionally treated differently from
10   others who are similarly situated. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To
11   succeed on a "class of one" claim, plaintiffs must prove that defendants (1) intentionally (2) treated
12   B.H. differently than other similarly situated special needs students (3) without a rational basis.
13   *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

14       However, the Supreme Court has limited "class of one" equal protection claims. In
15   *Engquist v. Oregon Dep't of Agric.*, the Court held that the class of one theory does not apply in
16   the public employment context. 553 U.S. 591, 598 (2008). The Court stated that certain forms of
17   state action which are highly discretionary and based upon individualized assessments are not
18   subject to the "class of one" theory of equal protection challenges.

19
20       There are some forms of state action, however, which by their nature involve
21       discretionary decisionmaking based on a vast array of subjective, individualized
         assessments. In such cases the rule that people should be "treated alike, under like
22       circumstances and conditions" is not violated when one person is treated differently
         from others, because treating like individuals differently is an accepted
23       consequence of the discretion granted. In such situations, allowing a challenge
         based on the arbitrary singling out of a particular person would undermine the very
24       discretion that such state officials are entrusted to exercise.

25
26   *Id.* Here, the court finds—as other courts have—that the basic principles that underline the
27   *Engquist* case apply in cases such as the one before the court today. *See, e.g.*, *Smith ex rel. Smith*
28   *v. Seligman Unified Sch. Dist. No. 40 of Yavapai Cnty., Ariz.*, 664 F. Supp. 2d 1070, 1078 (D. Ariz.

2009); *Jones v. Prince George's Cnty. Pub. Sch.*, No. CV DKC 14-3245, 2016 WL 4077711, at *5 (D. Md. Aug. 1, 2016).

Even considering the facts in the light most favorable to the plaintiffs, Fitzgerald's actions (corporal punishment and detention used as discipline) were not discriminatory. Like any system of discipline, punishment in schools necessarily varies based on the circumstances of each case. *Smith*, 664 F. Supp 2.d at 1078. To require teachers to impose identical punishments on all students disrupting the learning environment would strip teachers of the discretion inherent in their position. *Id.* Further, a particular form of punishment maybe effective for one student but not another. This is especially true considering the unique challenges that come with teaching students with learning disabilities where it is vital to have flexible methods of class management.

Subjecting teachers, administrators, and school districts to equal protection claims each time a different or individualized punishment is pursued would risk paralyzing school officials int their disciplinary duties—an outcome the Equal Protection Clause was never intended to create. *Id.*

Accordingly, the "class of one" theory of equal protection, which requires that like individuals are treated alike, has no place in the public school disciplinary context. Differing treatment among students generally reflects the individualized discretion inherent in school administration, not unconstitutional discrimination.

Therefore, the court grants defendants' summary judgement on the seventh cause of action.

B.  <u>ADA and RA claims</u>

Plaintiffs' eighth and tenth causes of action allege CCSD violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.* The two laws are interpreted coextensively because "there is no significant difference in the analysis of rights and obligations created by the two Acts." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021).

"To state a prima facie case for a violation of Title II, 'a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated

against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). To establish a prima facia RA claim, plaintiffs must further prove that the program receives federal financial assistance. *Id.* at 738.

As discussed *supra*, the court finds that as a matter of law, plaintiffs cannot establish that Fitzgerald's actions were discriminatory. There is also insufficient evidence to establish that B.H. was excluded from any program or that any benefits were denied because of Fitzgerald's—and thus CCSD's—actions. Therefore, the third element of an ADA or RA claim cannot be established. Accordingly, the court grants defendants' motion for summary judgment on the eighth and tenth causes of action.

C.  All other claims

As courts of limited jurisdiction, federal courts may exercise supplemental jurisdiction only over state-law claims that "are so related to claims in the action" that they form the same case or controversy with the claims over which the court has jurisdiction. 28 U.S.C. § 1367(a). Once a plaintiff's federal claims are eliminated, the court may decline to exercise supplemental jurisdiction over remaining state-law claims. 28 U.S.C. § 1367(c)(3). The exercise of supplemental jurisdiction is entirely within the court's discretion. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 716 (1966).

Here, because the only remaining claims against defendants are based in state-law, the court declines to exercise supplemental jurisdiction over. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims).

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 53) be, and the same hereby is, GRANTED.

1         IT IS FURTHER ORDERED that all other pending motions (ECF Nos. 56, 57, 63) are,

2    and the same hereby, DENIED as moot. Because the court declines to exercise supplemental

3    jurisdiction over the remaining claims, the case is to be DISMISSED without prejudice.

4         DATED November 17, 2025.

5

6    _____

    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28